IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BARRY J. STEINFELDER, | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. 12-cv-2970-JKB |
| CATLIN SPECIALTY INSURANCE COMPANY, *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM

Barry J. Steinfelder ("Plaintiff") brought this suit against Catlin Specialty Insurance Company ("Catlin") and Ogilvie Security Advisors, Corp. ("Ogilvie" and, collectively with Catlin, "Defendants"), alleging breach of contract, fraud, civil conspiracy to commit fraud, violation of N.Y. INS. LAW § 2316, tortious interference with contractual relations, and seeking to recover attorneys' fees. Now pending before the Court is Plaintiff's motion for default judgment against Ogilvie. The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Plaintiff's motion for default judgment will be GRANTED IN PART and DENIED IN PART.

I.     BACKGROUND

From 1999 through October 2010, Plaintiff was an independent contractor for Ogilvie, a Maryland corporation and broker-dealer that did business through licensed representatives. (Am. Compl. ¶ 3, 7; ECF No. 37-1.)[1] During this period, Plaintiff was registered with Financial

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

Industry Regulatory Authority ("FINRA")—a self-regulatory organization for securities firms doing business in the United States—as a registered representative for Ogilvie. (*Id.* ¶ 7.) Ogilvie offered "products, services, support staff, technology and competitive payouts" to the licensed registered representatives, who in turn offered various investment products to their clients. (*Id.* ¶ 3.) Ogilvie required all of its registered representatives, including Plaintiff, "to enroll and obtain Ogilvie's Errors and Omissions Insurance ("E&O") policy." (*Id.* ¶ 7.) During his tenure with Ogilvie, Plaintiff purchased this required insurance through various insurance companies, and at all times he paid his premiums for the E&O insurance "directly to Ogilvie." (*Id.* ¶ 8.) In May 2007, Ogilvie notified Plaintiff "by e-mail that effective June 1, 2007, Catlin would be providing Ogilvie's E&O insurance coverage." (*Id.* ¶ 9.)

On April 16, 2010, FINRA served Plaintiff with a copy of an arbitration claim made by Mr. and Mrs. Warren Klawans and their related trusts against Plaintiff and Ogilvie. (Am. Compl. ¶ 18.) Ogilvie received a copy of the arbitration claim on the same day. (*Id.*) This arbitration, known as FINRA Arbitration No. 10-01314, related to "the possible purchase of variable life insurance policies [by the Klawans] in January 2007." (*Id.*) After being served with the claim, Plaintiff "began communicating with Ogilvie almost immediately." (*Id.* ¶ 19.) On May 6, 2010, Plaintiff shared "a copy of his draft response to the FINRA inquiry [with] Ogilvie's counsel." (*Id.* ¶ 20.) Plaintiff alleges that he "was led to believe that Ogilvie's mandatory E&O policy would be providing coverage," and that he therefore "reasonably concluded that his communications with [Ogilvie and its representative] about the claim thereby provided notice to Catlin." (*Id.*)

On May 27, 2010, Ogilvie informed Plaintiff that the Policies did not cover the Klawans' arbitration claim. (*Id.* ¶ 21.) On June 2, 2010, Plaintiff retained counsel. (*Id.* ¶ 22.) On August

25, 2010, a representative of the producer of the Policies "confirmed that Catlin had been provided notice of the matter." (*Id.* ¶ 23.) From at least May 2010 through October 2010, Plaintiff repeatedly requested that Ogilvie or Catlin provide Plaintiff with a copy of the Policies. (*See id.* ¶¶ 21, 24.) On October 15, 2010, Catlin provided Plaintiff with a copy of the 2010/11 Policy. (*Id.* ¶ 24.) On October 26, 2010, Catlin declined coverage. (*Id.* ¶ 26.)

On August 27, 2012, Plaintiff filed his complaint in the Circuit Court of Maryland for Baltimore County. On October 5, 2010, Defendants removed the case to this Court. On November 12, 2012, Defendants filed separate motions to dismiss (ECF Nos. 27, 28). On May 15, 2013, the Court issued a memorandum and order ruling on Defendants' motions to dismiss. (ECF Nos. 50, 51.)

On March 29, 2013, Ogilvie filed with the Court a notice that it no longer intends to provide a defense in this litigation. (ECF No. 47.) On July 18, 2013, Plaintiff filed a motion for the Clerk's entry of default against Ogilvie (ECF No. 62) and a motion for default judgment against Ogilvie (ECF No. 63). On the same day, Plaintiff filed certificates of service reflecting that copies of both default-related motions were served on Ogilvie's custodian of records. On August 13, 2013, the Clerk entered an order of default against Ogilvie. (ECF No. 73.)

## II. LEGAL STANDARD

In reviewing a motion for default judgment, the court accepts as true the well-pled factual allegations in the complaint with regard to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). Default alone, however, does not establish liability; rather, the court must determine as a matter of law whether the plaintiff's well-pled factual allegations entitle him to the relief he seeks. 10A CHARLES ALAN WRIGHT, *ET AL.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. Supp.2010); *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). If the court determines that liability exists, then it must determine the proper amount of damages. In this regard, the court does not accept the plaintiff's allegations as true, but instead must make an independent determination. *See Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). If the record does not contain sufficient evidence to determine damages, the court may conduct a hearing to determine a proper award. FED. R. CIV. P. 55(b)(2)(B).

   **III.    ANALYSIS**

The Court has previously held that the only claim against Ogilvie in Plaintiff's amended complaint for which relief can be granted is the second fraud claim (Count IV). (*See* ECF Nos. 50, 51.) Only Plaintiff's theory that Ogilvie made material omissions by requiring Plaintiff to purchase insurance coverage from Catlin and then repeatedly refused to disclose the terms of the insurance contract survived the motion to dismiss. (*Id.*) As the Court previously held, the factual allegations in the amended complaint support Plaintiff's entitlement to relief for this fraud claim. (*Id.*)

In support of this motion, Plaintiff filed an affidavit stating that he incurred $373,576.67 of attorneys' fees in connection with the Klawans arbitration matter. The accompanying ledger reflects that, during the period from March 10, 2010 through January 16, 2010, Plaintiff's attorneys billed $359,319.75 of fees and $14,256.92 of expenses. Plaintiff's amended complaint alleges that he was served with the FINRA claim on April 16, 2010 and that he did not retain counsel until June 2, 2010. (Am. Compl. ¶¶ 18, 22.) The amended complaint alleges that from that date "until the resolution of the claim in December 2011, when [Plaintiff] was dismissed from the Klawans Arbitration two (2) days before the hearing was to begin, [Plaintiff's] counsel vigorously and aggressively represented [Plaintiff] by preparing and responding to pre-trial

4

motions to dismiss, engaging in the discovery process, numerous telephone conferences and hearings, preparing and responding to discovery related motions, and preparing to participate in the arbitration." (*Id.* ¶ 27.)[2] Based on these allegations, Plaintiff is entitled to receive—at most—the fees and expenses incurred between June 2, 2010 and December 2011. According to the affidavit and ledger filed by Plaintiff in support of this motion, the first bill after June 2, 2010 was dated July 27, 2010. The final bill reflected in ledger was dated January 16, 2012, which could reasonably be expected to reflect fees and expenses incurred during December 2011. The total fees and expenses sought by these bills is $357,372.54 ($343,363.50 fees and $14,009.04 expenses). Therefore, the Court will award damages in the amount of $357,372.54 plus interest as provided by law.

Plaintiff's motion also seeks an award of costs against Ogilvie, but does not specify the amount. Plaintiff has not provided any evidentiary basis on which the Court could determine his costs. Finally, Plaintiff seeks an award of punitive damages or a hearing on the issue. Plaintiff has not set out authority for the proposition that he is entitled under New York law to recover punitive damages for the fraud claim, and he has not cited facts to support this argument. Therefore, the Court will deny Plaintiff's motion with respect to punitive damages.

## IV.     CONCLUSION

Accordingly, an order shall issue GRANTING Plaintiff's motion for default judgment with respect to compensatory damages, DENYING Plaintiff's motion for expenses, and DENYING Plaintiff's motion for default judgment with respect to punitive damages.

---

[2] Incidentally, the same paragraph of the amended complaint alleges that Plaintiff incurred legal fees in the amount of $402,239.75.

Dated this 3rd day of September, 2013

                                                  BY THE COURT:

                                                  _____/s/_____
                                                  James K. Bredar
                                                  United States District Judge